**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PLAZA HOME MORTGAGE, INC,

                Plaintiff,

          -v-                             5:25-CV-949 (AJB/TWD)

JOSHUA T. BAGGS,

                Defendant.

_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**ORDER GRANTING DEFAULT JUDGMENT**

**I.      INTRODUCTION**

On July 18, 2025, plaintiff Plaza Home Mortgage, Inc. ("Plaza" or "plaintiff") filed this diversity action under Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), [N.Y. Real Prop. Acts Law] §§ 1301–93, to foreclose on a mortgage encumbering the property at 31 Van Buren Street, Antwerp, New York 13608 (the "Subject Property") against defendant Joshua T. Baggs ("defendant") and several placeholder defendants.[1] Dkt. No. 1.

On January 9, 2026, plaintiff moved for default judgment. Dkt. No. 15. Because the time period in which to oppose has expired, the motion will be considered on the basis of the available submissions without oral argument.

**II.      BACKGROUND**

---

[1] Plaintiff now requests to amend the case caption to strike the twelve "John Doe" defendants, as none were ever identified or served. _See_ Pl.'s Mem. at 9. Rule 21 of the Federal Rules of Civil Procedure provides, in relevant part, "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Accordingly, plaintiff's request to drop the unnamed placeholder defendants will be granted.

- 1 -

On August 8, 2024, defendant executed a note in favor of Plaza in the amount of $183,870.00. Compl. ¶ 8 & Ex. B, Dkt. No. 1. The note was secured by a mortgage against the Subject Property recorded on August 14, 2024. Compl. ¶ 8; Dkt. No. 1-3, Ex. C. Thereafter, defendant failed to make the monthly payments and, despite being given notice to cure, eventually defaulted on the note. Compl. ¶¶ 11–12.

On January 9, 2026, Plaza moved under Rule 55 of the Federal Rules of Civil Procedure for a default judgment. Dkt. No. 15. Despite having been served with plaintiff's moving papers, *id.*, defendant has failed to respond. The time period in which to do so has since expired. *See id.* Accordingly, plaintiff's motion will be considered on the basis of the available submissions without oral argument.

## III.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. FED. R. CIV. P. 55(a)–(b). The first step is to obtain an entry of default from the Clerk of the Court. *Id.* 55(a). The second step is to move for a default judgment, which must be approved by the court except in those rare cases where the plaintiff's claim is for a sum certain. *Id.*55(b)(1)–(2).

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). But "it is not considered an admission of damages." *Id*. And "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (cleaned up). "Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility that

the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010).

## IV.    DISCUSSION

### A.  Liability

"Under New York state law, three elements must be established in order to sustain a foreclosure claim: (1) the proof of the existence of an obligation secured by a mortgage; (2) a default on that obligation by the debtor; and (3) notice to the debtor of that default." *United States v. Paugh*, 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004).  With respect to the third element, RPAPL § 1304 requires that, "at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower . . . such lender, assignee or mortgage loan servicer shall give notice to the borrower."

Plaintiff satisfies all three elements.  First, plaintiff provided a copy of the signed note dated August 8, 2024.  *See* Ex. B to Compl.  Plaintiff also provided a copy of the consolidated mortgage.  *See* Ex. C to Compl.  Second, plaintiff has provided proof that defendant defaulted on the mortgage.  *See* Ex. E to Dkt No. 15 ("Pl.'s Mot. For Default J.").  Third, plaintiff has provided proof that it served defendant with notice of the default and evidence of its compliance with RPAPL § 1304's ninety-day notice period.  *See* Ex. E to Compl.

This showing is sufficient to entitle plaintiff to a default judgment.  *See, e.g.*, *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414–15 (E.D.N.Y. 2018) ("Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has demonstrated its prima facie case of entitlement to judgment.").  Accordingly, plaintiff's motion for default judgment must be granted.

Notably, the Servicemembers Civil Relief Act does not bar this foreclosure action. As plaintiff notes, defendant was active in the Army during the period from July 2, 2020, to June 24, 2025. *See* Ex. G to Pl.'s Mot. For Default J.; Pl.'s Mem. at 7–8. Although the Servicemembers Civil Relief Act requires a lender to obtain a court order before foreclosing on or selling property owned by a current or recent servicemember where the mortgage obligation "originated before the period of the servicemember's military service," 50 U.S.C. § 3953(a); *see id.* § 3953(c), it does not apply to obligations incurred during the servicemember's military service. *See Sibert v. Wells Fargo Bank, N.A.*, 863 F. 3d 331, 334 (4th Cir. 2017) (explaining that Congress "chose not to protect obligations incurred during military service because both the servicemembers and lenders would be aware of the servicemember's income and military status").

Because defendant originated the subject loan and executed both the subject note and the subject mortgage in August 2024—squarely within his term of military service—defendant cannot claim the remedy provided in § 3953. *See Sibert*, 863 F.3d at 334 (explaining the statute denies protections "to obligations originating *during* the servicemember's military service).

Finally, plaintiff has complied with the affidavit requirements set forth in 50 U.S.C. § 3931, which governs default judgments in cases involving servicemembers. That provision requires a plaintiff seeking a default judgment to file an affidavit stating whether the defendant is in military service, or that the plaintiff is unable to determine the defendant's military status after making a good faith effort. 50 U.S.C. § 3931(b)(1). Here, plaintiff submitted evidence confirming defendant's period of active-duty service. *See* Ex. G to Pl.'s Mot. For Default J. Because the record affirmatively establishes defendant's military status—and, for the reasons discussed above, the protections of the Servicemembers Civil Relief Act do not preclude this

action—the requirements of § 3931 are satisfied, and entry of default judgment is not barred on that basis.

**B. Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. To that end, Rule 55(b) of the Federal Rules of Civil Procedure permits— but does not require—a district court to "conduct hearings or make referrals" in order to, among other things, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." FED. R. CIV. P. 55(b)(2)(B)–(D).

As relevant here, the Second Circuit has held that a district court can determine the amount of damages through affidavits or other evidence, without an in-person court hearing, "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotations omitted). On a motion for default judgment, "any determination of default damages should be determined under the terms of the Note[ ] and Mortgage[ ] . . . " *Builders Bank v. Rockaway Equities, LLC*, 2011 WL 4458851, at *5 (E.D.N.Y. Sept. 23, 2011).

Plaintiff's request for damages relies upon the affirmation of Claribel Lopez ("Lopez's Affirmation"). *See* Lopez's Aff., Dkt. No. 15. Lopez is employed as a Vice President by PHH Mortgage Corporation as an authorized agent for Plaza. *Id.* Lopez avers that Plaza is the owner of a promissory note and mortgage securing the note on the Subject Property. *Id.* ¶¶ 4–6. Lopez has attached to her affirmation a Schedule of the amount due on the note which she compiled after examining the records kept by Plaza in the regular course of its business. *Id.* ¶ 16.

Lopez's affirmation asserts that plaintiff is entitled to $196,577.51 for total default damages pursuant to the note and mortgage.  Lopez's Aff. ¶ 16.  This figure includes $183,226.78 in unpaid principal balance, $10,132.04 in interest, $2,346.54 in escrow balance, and $872.15 in additional charges.  *See id.*  The Court will address each of these categories of damages in turn.

| Category | Calculation/Source of Amount | Totals |
|---|---|---|
| Principal Balance | Per Pl.'s Mem. at 1, the original amount was $183,870.00. *See also* Dkt. No. 1. However, per Lopez's Aff. at ¶ 16, the unpaid balance due as of October 16, 2025 was $183,226.78.  *See also* Pl.'s Proposed Order at 1, Dkt. No. 15; Pl.'s Proposed Statement of Damages, Dkt. No. 15. | $183,226.78 |
| Interest | Interest from 01/01/2025 to 10/16/2025 at 6.99%.  *See* Lopez's Aff. at ¶ 16; Pl.'s Proposed Order at 1–2; Pl.'s Proposed Statement of Damages. | $10,132.04 |
| Total Escrow Balance | *See* Lopez's Aff. at ¶ 16; Pl.'s Proposed Order at 2; Pl.'s Proposed Statement of Damages. | $2,346.54 |
| Property Inspections | *See* Lopez's Aff. at ¶ 16; Pl.'s Proposed Order at 2; Pl.'s Proposed Statement of Damages. | $150.00 |
| Title Search Expenses | *See* Lopez's Aff. at ¶ 16; Pl.'s Proposed Order at 2; Pl.'s Proposed Statement of Damages. | $600.00 |
| Late Charges | *See* Lopez's Aff. at ¶ 16; Pl.'s Proposed Order at 2; Pl.'s Proposed Statement of Damages. | $122.15 |
| **Total** | | **$196,577.51** |

### 1. Principal

Under Section I of the note, Baggs promised that "[i]n return for a loan in the amount of U.S. $183,870.00 (the "Principal") that I have received . . . I promise to pay the Principal, plus interest, to the order of the Lender."  Ex. B to Compl.

Based on Vice President Lopez's review of the records, defendant's failure to make timely monthly payments has resulted in an outstanding principal of $183,226.78 due on the note as of October 16, 2025.  *See* Lopez's Aff. ¶ 16.  "The note and mortgage, as the governing

instruments, should determine any default damages." *OneWest Bank, N.A. v. Conklin*, 310

F.R.D. 40, 44 (N.D.N.Y. 2015) (D'Agostino, J.) (citing *Builders Bank*, 2011 WL 4458851 at *6).

Therefore, the Court concludes that plaintiff is entitled to the outstanding principal balance of

$183,226.78 through foreclosure and sale of the property.

### 2. Interest

Plaintiff also seeks interest in the amount of $10,132.04 at an annual rate of 6.99%,

accrued between January 1, 2025, and October 16, 2025. *See* Lopez's Aff. at ¶ 16; Pl.'s

Proposed Order at 1; Pl.'s Proposed Statement of Damages.

Section II of the note states that "[i]nterest will be charged on unpaid Principal until the

full amount of the Principal has been paid.  I will pay interest at a yearly rate of 6.990%."  Ex. B

to Compl.  Plaintiff's calculation of interest through October 16, 2025, appears to be correct.  At

6.99% interest, defendant also owes $35.09 per day on the principal owed for all dates following

October 16, 2025. *See* Pl.'s Proposed Statement of Damages.  Because plaintiff has submitted

documentation showing the payment history of the loan, Ex. G to Pl.'s Mot. For Default J.,

plaintiff's request for an award of interest in the amount of $10,132.04, plus interest at a rate of

$35.09 *per diem* accruing after October 16, 2025, must be granted. *See E. Sav. Bank, FSB v.*

*Whyte*, 2015 WL 790036, at *6 (E.D.N.Y. Feb. 24, 2015) (finding a claim for damages sufficient

where the plaintiff submitted an affidavit that "includes the payment log and an accrued interest

schedule, which details all interest that has accrued and interest that has been paid since the

inception of the loan").

### 3. Additional Costs

Finally, plaintiff requests other amounts allowed by the note and mortgage; namely, escrow balance, property inspections, title search expenses, and late charges.  *See* Lopez's Aff. at ¶ 16; Pl.'s Proposed Order at 1; Pl.'s Proposed Statement of Damages.

In support of these requests, plaintiff has submitted business records showing the amounts claimed.  *See* Ex. P. to Pl.'s Mot. For Default J.  With respect to these claims, the Court is "satisfied that the documents submitted . . . sufficiently demonstrate, by competent proof," that these amounts are owed to plaintiff.  *Onewest Bank, N.A. v. Shepherd*, 2015 WL 1957284, at *1 (N.D.N.Y. Apr. 29, 2015) (McAvoy, J.).

### C. Attorney's Fees

Plaintiff also requests attorney's fees and costs.  "Since there is no statute in New York authorizing the recovery of an attorneys' fee in a mortgage foreclosure action, such a fee may only be recovered if it is contractually authorized."  *Vigo v. 501 Second St. Holding Corp.*, 121 A.D.3d 778, 779 (N.Y. 2014).  The mortgage and promissory note provide that, in the event of default, the mortgage holder is entitled to "reasonable attorney's fees and costs."  Dkt. No. 1.  Accordingly, attorney's fees are available.

But the inquiry does not end there.  "[A]ny attorney . . .  who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

In support of plaintiff's request for attorney's fees, plaintiff has submitted the affirmation of Eric Sheidlower, Esq. (Sheidlower Aff.).  *See* Ex. O to Pl.'s Mot. For Default J.  Sheidlower's

affirmation asserts that the time estimates outlined in the provided list of "Legal Services Performed" are "averaged based on volume as the firm is paid by the client a flat fee of $5,562.50, which fee encompasses all work, other than contested issues, from receipt of the file through completion." *Id.* ¶ 4–5.  Notably, there are no dates associated with the work performed. *See id.*  Further, three of the services included on the list have yet to occur, including counsel's "[a]ppearance at foreclosure sale." *See id.*

Measured against the general governing law, counsel's affirmation falls short of the standards applied in this Circuit when seeking an award of attorney's fees.  Failure to support a fee application with contemporaneous records generally results in denial of any award.  *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).

Even where the attorney charges the client a flat fee, courts have permitted "such awards where the attorney also presented contemporaneous time records" but have denied these awards "where the attorney failed to maintain and produce contemporaneous time records." *CIT Bank v. Dambra*, 2015 WL 7422348, at *8 (E.D.N.Y. Sept. 25, 2015) (collecting cases).  While "actual contemporaneous time records" are not always necessary, there is no indication here that counsel's summary of the work performed was based upon contemporaneous recordkeeping as the services were being provided.  *Cf. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (holding that attorney's fees should be awarded even though counsel "did not submit actual contemporaneous time records" because "[a] review of the submissions made by [the attorneys] shows that they made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records").

Counsel's inclusion of tasks that have not yet occurred is also impermissible under Second Circuit precedent.  *See Onewest Bank, N.A. v. Cole*, 2015 WL 4429014, at *7 (E.D.N.Y.

July 17, 2015) (denying request for award of attorney's fees and noting that "[t]he affirmation also includes tasks that have not yet occurred, including 'Post sale activity' despite the Court not yet ordering such sale").

Therefore, in the absence of contemporaneous time records or reconstructions of those contemporaneous records, plaintiff's request for an attorney's fee award must be denied.  *See Kingvision Pay–Per–View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) ("Counsel's failure to offer more than the most general estimate of time expended in this case therefore precludes any award of fees.").

Plaintiff also seeks costs in the amount of $1,650.  As previously noted, the mortgage and promissory note provide that, in the event of default, the mortgage holder is entitled to "reasonable attorney's fees and costs."  Dkt. No. 1.  Plaintiff requests to have the following costs reimbursed: $405.00 clerk's fee, $1,220.00 fee for service of process, and $60.00 notice of pendency filing fee.  *See* Ex. M to Pl.'s Mot. For Default J.

Reasonable and identifiable out-of-pocket expenses of the kind ordinarily charged to clients are recoverable.  *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiff has provided documentary evidence substantiating each of the listed costs.  *See* Ex. M to Pl.'s Mot. For Default J.  Accordingly, plaintiff will be awarded $1,650 in costs.  *See Mestousis Enters. Inc. v. Concord Blue Inc.*, 2012 WL 254987 at *4 (S.D.N.Y. Jan.27, 2012) (awarding costs that were "substantiated by receipts"), *report and recommendation adopted*, 2012 WL 1193752 (S.D.N.Y. Apr. 10, 2012).

### D. Judgement of Foreclosure and Appointment of Referee

Finally, plaintiff seeks a judgement of foreclosure and the appointment of Todd Doldo, Esq. as referee to sell the Subject Property under conditions set out in the proposed Judgment of Foreclosure and Sale. *See* Pl.'s Proposed Order.

"[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *U.S. v. Watts*, 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014) (citations omitted), *report and recommendation adopted*, 2014 WL 4293815 (E.D.N.Y. Aug. 28, 2014).

As previously discussed, plaintiff has provided the Court with the note, the mortgage, and proof of default. Defendant has failed to appear or respond to plaintiff's legal arguments and has thus failed to make the affirmative showing required to overcome Plaza's presumptive right to foreclose on the Subject Property. Accordingly, the Court orders that a judgment of foreclosure and sale of the subject property be entered, and that the named referee be appointed to effectuate the foreclosure and sale of the property. The Court further orders that the proceeds of any sale be applied to the amount owed on the note.

Therefore, it is

ORDERED that

1. Plaintiff's motion for default judgment (Dkt. No. 15) is GRANTED in part and DENIED in part;

2. Plaintiff SHALL RECOVER from defendant totaling **$196,577.51**, plus interest at 6.99% accruing between October 16, 2025, and the date of this decision and costs in the amount of $1,650; and

- 12 -

3.  A judgment of foreclosure and sale of the subject property shall be entered and a referee shall be appointed to effectuate the foreclosure and sale of the property.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:   March 25, 2026
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge